**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., as subrogee of The Johns Hopkins University,<br>1271 Avenue of the Americas, Floor 37<br>New York, New York 10020<br><br>Plaintiff,<br>v.<br><br>TINA MOORE<br>3660 Clifmar Road<br>Windsor Mill, Maryland 21244<br><br>and<br><br>LAMOS JALLOH<br>1402 Pannell Drive, Apt. N<br>Aberdeen, Maryland 21001<br><br>Defendants. | No.: |

**<u>PLAINTIFF'S CIVIL ACTION COMPLAINT</u>**

Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa., as subrogee of The Johns Hopkins University, by and through its attorneys, files this Complaint against Defendants Tina Moore and Lamos Jalloh, and in support thereof avers the following:

**<u>PARTIES</u>**

1. Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), is a corporation formed and existing in accordance with the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 1271 Avenue of the Americas, Floor 37, New York, New York 10020.

2. National Union is a citizen of the Commonwealth of Pennsylvania and the State of New York.

3. Defendant Tina Moore ("Moore") is an individual person who, upon information and belief, is a citizen of the State of Maryland and has an address of 3660 Clifmar Road, Windsor Mill, Maryland 21244.

4. Defendant Lamos Jalloh ("Jalloh") is an individual person who, upon information and belief, is a citizen of the State of Maryland and has an address of 1402 Pannell Drive, Apt. N, Aberdeen, Maryland 21001.

## **JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the Commonwealth of Pennsylvania and the State of New York, all Defendants are citizens of the State of Maryland, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the employment of Moore and Jalloh at Hopkins's facilities in Baltimore, Maryland, and the retention, invoicing, and payment of fraudulent independent contractors at Hopkins's offices in Baltimore, Maryland.

## **FACTUAL ALLEGATIONS**

7. The Johns Hopkins University ("Hopkins") is a private university headquartered at 3400 North Charles Street, Baltimore, Maryland 21218.

8. At all times relevant hereto, Moore was employed by Hopkins as Administrative Manager of the Department of Neurology and Neurosurgery.

9. At all times relevant hereto, Jalloh was employed by Hopkins as a Grants and Contracts Analyst in the Department of Neurology and Neurosurgery.

10. Moore was responsible for overseeing administrative functions within the Department, including the hiring and management of independent contractors, approval of invoices, and management of departmental cost centers.

11. Jalloh was responsible for managing grants and contracts, submitting vendor invitations through the Payment Works system, and running monthly grant reports.

12. Beginning in approximately 2021 and continuing through at least October 2023, Moore and Jalloh colluded in a scheme to misappropriate funds from Hopkins through the fraudulent retention of independent contractors.

13. Moore hired approximately twenty-four (24) individuals and companies as independent contractors using Department cost centers.

14. All of the independent contractor agreements were structured to remain under the $5,000 threshold in order to avoid additional review by the Department.

15. A number of the contractors had personal relationships with Moore and/or Jalloh, including family members of both Defendants.

16. The contractors either did not perform the services for which they were compensated or performed work valued at substantially less than the amount paid for such work.

17. Moore signed and certified the Independent Contractor Agreements as the Hopkins Department Head or Designee.

18. Moore provided the contractors with a sample invoice format, and virtually all invoices submitted by the contractors shared a similar format and style.

19. Moore then approved the invoices for payment.

20. Jalloh submitted vendor invitations through the Payment Works system to facilitate payments to the contractors.

21. Jalloh ran monthly grant reports identifying grants with deficit and positive balances, and Moore directed the transfer of expenses from deficit grants to grants with available funds to conceal the payments.

22. Among the contractors, Moore hired her nephew, Jamal Moore, and her brother, Rashaad Moore, as independent contractors.

23. Moore also hired Jalloh's daughters, both of whom were fourteen years old at the time of their hire in June 2023, as independent contractors purportedly to perform clerical work.

24. Moore received kickbacks from at least one contractor, Jessica Johnson, as evidenced by bank statements.

25. Moore altered employment records, including offer letters and pay stubs, for certain contractors.

26. Moore improperly answered "No" on Independent Contractor Agreement forms when asked whether the contractor was related to any Hopkins employee.

27. On or about October 24, 2023, Hopkins's Assistant Director of Finance, Neurology and Neurosurgery notified the Office of Hopkins Internal Audits ("OHIA") of questionable practices and transactions involving the Department's independent contractors.

28. On October 27, 2023, Hopkins placed both Moore and Jalloh on administrative leave, disabled their systems access, and instructed them not to return to work.

29. Hopkins's investigation determined that the Defendants' scheme resulted in a total loss of $1,758,010.24.

30. National Union issued a PortfolioSelect Policy, Policy No. 01-357-64-04, to Hopkins, with a policy period from August 1, 2023, through August 1, 2024, under which National

Union agreed to insure Hopkins for losses sustained due to employee dishonesty, among other coverages.

31. Pursuant to the Policy, National Union indemnified Hopkins for the losses sustained.

32. As a result of indemnifying Hopkins, National Union has become subrogated to Hopkins's rights against Defendants.

33. Despite demand, neither Moore nor Jalloh has reimbursed Hopkins or National Union for any portion of the loss.

**COUNT I - FRAUD**
**National Union v. Moore and Jalloh**

34. National Union repeats and realleges the above allegations as if set forth herein.

35. Moore and Jalloh falsely represented that the independent contractors retained by Moore were legitimate, that the services identified on their invoices were needed for the Department's operations, and that Hopkins should approve and pay those invoices.

36. Moore and Jalloh knew these representations were false because the contractors either did not perform the services for which they were compensated, performed services valued at far less than the amounts of the payments, had personal relationships with Defendants, and/or were otherwise not legitimate independent contractors.

37. Moore and Jalloh made these false representations, or caused them to be made, with the intent to defraud Hopkins and to induce Hopkins to approve the fraudulent invoices, issue payment to the contractors, and refrain from detecting or stopping their misconduct.

38. Hopkins justifiably relied on Moore's and Jalloh's misrepresentations because Moore, as Administrative Manager, and Jalloh, as Grants and Contracts Analyst, were entrusted

with the Department's administrative and financial functions, and the invoices and contractor agreements appeared to relate to the Department's legitimate needs.

39. Moore's and Jalloh's conduct was wanton and willful and committed with actual malice because they intentionally participated in the fraudulent independent contractor scheme to defraud Hopkins.

40. As a result of Moore's and Jalloh's fraud, Hopkins, and thus National Union as subrogee of Hopkins, suffered a loss in the principal amount of $1,758,010.24 and is entitled to recover punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff, National Union, demands judgment in its favor and against Defendants, jointly and severally, for compensatory damages in the amount of $1,758,010.24, together with punitive damages, pre-judgment and post-judgment interest, costs of suit, and all further relief that the Court determines to be appropriate.

**COUNT II - BREACH OF FIDUCIARY DUTY**
**National Union v. Moore and Jalloh**

41. National Union repeats and realleges the above allegations as if set forth herein.

42. As Hopkins employees in positions of trust, Moore (Administrative Manager responsible for overseeing the Department's administrative functions, including the hiring and management of independent contractors, approval of invoices, and management of departmental cost centers) and Jalloh (Grants and Contracts Analyst responsible for managing grants and contracts, submitting vendor invitations, and running monthly grant reports) owed Hopkins fiduciary duties to act in Hopkins's best interests, safeguard Hopkins's funds and property, provide honest and accurate information concerning independent contractor engagements and invoices, ensure that contractor expenses were legitimate, and refrain from stealing from Hopkins.

43. Moore breached those duties by hiring fraudulent independent contractors, structuring agreements to evade review thresholds, approving fraudulent invoices for payment, receiving kickbacks, altering employment records, and concealing the scheme.

44. Jalloh breached those duties by submitting vendor invitations to facilitate payments to fraudulent contractors, running grant reports to enable the transfer of expenses to conceal the scheme, and allowing his own family members to be hired as sham contractors.

45. Their conduct was wanton and willful and committed with actual malice because they intentionally exploited their positions, administrative authority, and access to Hopkins's financial systems to misappropriate Hopkins's funds.

46. As a result of the aforementioned breach of fiduciary duty by Moore and Jalloh, Hopkins, and thus National Union as subrogee of Hopkins, suffered a loss in the principal amount of $1,758,010.24 and is entitled to recover punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff, National Union, demands judgment in its favor and against Moore and Jalloh, jointly and severally, for compensatory damages in the amount of $1,758,010.24, together with punitive damages, pre-judgment and post-judgment interest, costs of suit, and all further relief that the Court determines to be appropriate.

**COUNT III – CONVERSION**
**National Union v. Moore and Jalloh**

47. National Union repeats and realleges the above allegations as if set forth herein.

48. Hopkins's funds, in the amount of $1,758,010.24, constituted specific, identifiable property belonging to Hopkins.

49. Moore and Jalloh, through the fraudulent independent contractor scheme described above, intentionally and wrongfully exercised dominion and control over Hopkins's funds by

causing those funds to be paid to sham contractors for services that were not performed, diverting them from their intended and lawful purpose.

50. Moore and Jalloh's exercise of dominion and control over Hopkins's funds was unauthorized, in that it was contrary to Hopkins's interests and was accomplished through fraud, misrepresentation, and concealment.

51. Moore and Jalloh's conversion of Hopkins's funds was willful and malicious, because they knowingly and intentionally misappropriated Hopkins's property for their own benefit and the benefit of their associates and family members.

52. As a result of Moore's and Jalloh's conversion, Hopkins, and thus National Union as subrogee of Hopkins, suffered a loss in the principal amount of $1,758,010.24 and is entitled to recover punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff, National Union, demands judgment in its favor and against Defendants, jointly and severally, for compensatory damages in the amount of $1,758,010.24, together with punitive damages, pre-judgment and post-judgment interest, costs of suit, and all further relief that the Court determines to be appropriate.

**COUNT IV - CIVIL CONSPIRACY**
**National Union v. Moore and Jalloh**

53. National Union repeats and realleges the above allegations as if set forth herein.

54. Moore and Jalloh agreed and acted in concert to accomplish the unlawful objective of misappropriating Hopkins funds through the fraudulent independent contractor scheme.

55. In furtherance of that agreement, Moore hired the contractors, signed and certified the contractor agreements, provided invoice templates, approved invoices for payment, received kickbacks, and altered employment records, while Jalloh submitted vendor invitations, ran grant

reports to identify funds available for concealment, and facilitated the hiring of his own family members as sham contractors.

56. The underlying tortious conduct supporting the conspiracy includes the fraud, breach of fiduciary duty, and conversion alleged in Counts I, II, and III.

57. As a result of Defendants' conspiracy, Hopkins, and thus National Union as subrogee of Hopkins, suffered a loss in the principal amount of $1,758,010.24 and is entitled to recover punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff, National Union, demands judgment in its favor and against Defendants, jointly and severally, for compensatory damages in the amount of $1,758,010.24, together with punitive damages, pre-judgment and post-judgment interest, costs of suit, and all further relief that the Court determines to be appropriate.

**COUNT V - UNJUST ENRICHMENT**
**National Union v. Moore and Jalloh**

58. National Union repeats and realleges the above allegations as if set forth herein.

59. Moore and Jalloh have been unjustly enriched as a result of their fraudulent independent contractor scheme, in that they received, directly or indirectly, the benefit of Hopkins's funds that were paid to sham contractors who had personal relationships with Defendants, including Defendants' own family members.

60. Moore was further unjustly enriched through kickbacks received from at least one contractor, Jessica Johnson.

61. Jalloh was further unjustly enriched through the employment of his minor daughters as sham independent contractors, who received payments totaling $5,012 and $4,982, respectively.

62. It would be unconscionable for Moore and Jalloh to retain the benefits derived from their misconduct without compensating Hopkins, and thus National Union as subrogee of Hopkins, for the losses sustained.

63. As a result of Moore's and Jalloh's unjust enrichment, Hopkins, and thus National Union as subrogee of Hopkins, has been damaged in the principal amount of $1,758,010.24.

WHEREFORE, Plaintiff, National Union, demands judgment in its favor and against Defendants, jointly and severally, for restitution and disgorgement in the amount of $1,758,010.24, together with pre-judgment and post-judgment interest, costs of suit, and all further relief that the Court determines to be appropriate.

Respectfully submitted,

/s/ *H. Mark Stichel*

H. Mark Stichel, Bar No. 02939
Laura L. Rubenstein, Bar No. 26338
RKW Law Group
10075 Red Run Boulevard
Owings Mills, MD 21117
Telephone: (443)379-8987
Fax: (443) 379-4023
hmstichel@rkwlawgroup.com
lrubenstein@rkwlawgroup.com